**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re HEXO Corp. Securities Litigation | Case No.: 1:19-cv-10965-NRB<br><br>Hon. Naomi Reice Buchwald |

## MOVANT CHI FUNG WONG'S MEMORANDUM OF LAW
## IN SUPPORT OF MOTION FOR RECONSIDERATION

Nicholas I. Porritt
Adam M. Apton
LEVI & KORSINSKY, LLP
55 Broadway, 10th Floor
New York, NY 10006
Tel.: (212) 363-7500
Fax: (212) 363-7171
Email: nporritt@zlk.com
Email: aapton@zlk.com

*Attorneys for Chi Fung Wong*

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................ 1

II.   LEGAL STANDARD.......................................................................................... 2

III.  ARGUMENT...................................................................................................... 3

    A.    The PSLRA Provides a Three-Step Process for Appointing the Lead Plaintiff. .... 3

    B.    The Burden for Showing "Adequacy" at the Lead Plaintiff Stage Is Minimal. ..... 4

    C.    The Court Committed Clear Error When It Denied Wong's Motion for Failing to Make a Threshold Showing of Adequacy.............................................................. 5

    D.    The Court Compounded Its Error by Comparing Wong and the Sweeney Group, and Selecting Who It Thought Was the Better Movant. ........................................ 9

IV.   CONCLUSION................................................................................................. 10

## TABLE OF AUTHORITIES

**Cases**

*Atwood v. Intercept Pharm., Inc.*,
299 F.R.D. 414 (S.D.N.Y. 2014) ................................................................................. 5

*In re Barrick Gold Corp. Sec. Litig.*,
No. 17 Civ. 3507 (NRB), 2017 U.S. Dist. LEXIS 173871 (S.D.N.Y. Oct. 4, 2017)............... 5

*In re Cavanaugh*,
306 F.3d 726 (9th Cir. 2002) ...................................................................... 2, 3, 4, 9

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001)................................................................................... 4, 5

*Blackmoss Investments, Inc. v. ACA Capital Holdings, Inc.*,
252 F.R.D. 188 (S.D.N.Y. 2008) ................................................................................. 8

*Chahal v. Credit Suisse Grp. AG*,
No. 18-CV-02268 (AT)(SN), 2018 U.S. Dist. LEXIS 104185 (S.D.N.Y. June 21, 2018)....... 9

*In re Facebook, Inc.*,
288 F.R.D. 26 (S.D.N.Y. 2012) ................................................................................. 5

*Galmi v. Teva Pharm. Indus.*,
302 F. Supp. 3d 485 (D. Conn. 2017)....................................................................... 7

*Gronich v. Omega Healthcare Inv'rs., Inc.*,
No. 17 Civ. 8983 (NRB), 2018 U.S. Dist. LEXIS 51934 (S.D.N.Y. Mar. 27, 2018).............. 5

*Iron Workers Local No. 25 Pension Fund v. Credit-Based Asset Servicing & Securitization, LLC*,
616 F. Supp. 2d 461 (S.D.N.Y. 2009)....................................................................... 7

*Karp v. Diebold Nixdorf, Inc.*,
No. 19 Civ. 6180(LAP), 2019 U.S. Dist. LEXIS 188670 (S.D.N.Y. Oct. 30, 2019) .............. 7

*Khunt v. Alibaba Grp. Holding Ltd.*,
102 F. Supp. 3d 523 (S.D.N.Y. 2015)..................................................................... 4, 9

*Nurlybaev v. ZTO Express (Cayman) Inc.*,
No. 17-CV-06130 (LTS)(SN), 2017 U.S. Dist. LEXIS 187238 (S.D.N.Y. Nov. 13, 2017) .... 9

*Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*,
322 F.3d 147 (2d Cir. 2003)................................................................................... 2

*In re Oxford Health Plans, Inc., Sec. Litig.*,
182 F.R.D. 42 (S.D.N.Y. 1998) ................................................................................. 3

ii

*In re Petrobras Sec. Litig.*,
     104 F. Supp. 3d 618 (S.D.N.Y. 2015)............................................................................ 7

*Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. LaBranche & Co.*,
     229 F.R.D. 395 (S.D.N.Y. 2004) ........................................................................ 8, 9, 10

*Sofran v. LaBranche & Co.*,
     220 F.R.D. 398 (S.D.N.Y. 2004) ............................................................................ 4, 10

*Stichting Ter Behartiging Van de Belangen Van Oudaandeelhouders In Het Kapitaal Van
     Saybolt International B.V. v. Schreiber*,
     407 F.3d 34 (2d Cir. 2005)......................................................................................... 2

*Vladimir v. Bioenvision*,
     No. 07 Civ. 6416 (SHS) (AJP), 2007 U.S. Dist. LEXIS 93470 (S.D.N.Y. Dec. 21, 2007) ..... 9

*Weinberg v. Atlas Air Worldwide Holdings, Inc.*,
     216 F.R.D. 248 (S.D.N.Y. 2003) .............................................................................. 5

*Weltz v. Lee*,
     199 F.R.D. 129 (S.D.N.Y. 2001) .............................................................................. 5

**Statutes**

15 U.S.C. §78u-4 ............................................................................................... 1, 3, 10

**Rules**

Local Civil Rule 6.3 ................................................................................................ 2

## I.    INTRODUCTION

Chi Fung Wong ("Wong") moved for lead plaintiff in this consolidated class action securities fraud lawsuit against Hexo Corp. The Court denied Wong's motion in its Memorandum and Order dated February 25, 2020 (Dkt. No. 78) (the "Order"). Although Wong was the movant with the "largest financial interest" in the litigation and, therefore, presumed to be the most adequate lead plaintiff, the Court was "skeptical" of his "sophistication" and decided instead to appoint Timothy Sweeney and John B. Medley (the "Sweeney Group"). "By contrast," as the Court explained, the Sweeney Group appeared better suited to serve as the lead plaintiff "[i]n light of their claimed losses and the *additional* information provided regarding their capacity to manage this litigation." Order at 6-8 (emphasis added). In arriving at this conclusion, the Court violated the Securities Exchange Act of 1934, as modified by the Private Securities Litigation Reform Act of 1995, 15 U.S.C. §78u-4 (the "PSLRA"), and disregarded decades of precedent from within this District. The Court's holding constituted a clear error of law and, consequently, Wong respectfully requests reconsideration of the Order.

Congress enacted the PSLRA to curb abusive practices in the lead plaintiff appointment process. For twenty-five years now, absent proof requiring otherwise, courts have followed the statutory scheme with almost absolute precision. The movant with the "largest financial interest" in the litigation that "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure" is presumed by statute to be the "most adequate plaintiff" to serve as lead plaintiff. As this Court has found on numerous occasions, the preliminary showing of adequacy and typicality under Rule 23 for a lead plaintiff movant is relatively minimal. Once established, the only way to rebut this presumption is for a competing movant to submit "proof" that the presumptive lead plaintiff will be inadequate or incapable of representing the class. 15 U.S.C. §78u-4(a)(3)(B)(iii). District courts have adhered dependably to this process. For the few aberrations that have risen over the years, mandamus review has fortified the process.

The Court strayed from this process when it denied Wong's motion. Despite (*i*) having the "largest financial interest" in the litigation and (*ii*) "satisfy[ing] the requirements of Rule 23 of the

1

Federal Rules of Civil Procedure," the Court did not apply the PSLRA's statutory "presumption" in Wong's favor. Had it done so, Wong's motion would have been granted as no rival movant submitted any evidence or proof of inadequacy or atypicality. Instead of introducing "proof", the Sweeney Group merely raised questions about Wong's "investment history" and "educational background" which Wong answered through a sworn declaration. *Sua sponte*, and without an evidentiary finding or anything resembling one, the Court concluded it was "skeptical" of Wong's "sophistication" and decided to appoint the Sweeney Group instead who, "[b]y contrast," appeared better suited to represent the class. Order at 6-8. Not one of the ten other movants seeking lead plaintiff in this case (including the Sweeney Group) ever accused Wong of lacking the sophistication necessary to serve as the lead plaintiff. This was because choosing a lead plaintiff under the PSLRA is not a contest of sophistication.

The PSLRA and decades of precedent since its enactment make clear that courts are not to "compar[e] plaintiffs with each other on any basis other than their financial stake in the case. Once that comparison is made and the court identifies the plaintiff with the largest stake in the litigation, further inquiry must focus on that plaintiff alone and be limited to determining whether he satisfies the other statutory requirements. That the district court believes another plaintiff may be 'more typical' or 'more adequate' is of no consequence." *See In re Cavanaugh*, 306 F.3d 726, 732 (9th Cir. 2002); *see also In re Cendant Corp. Litig.*, 264 F.3d 201, 268 (3d Cir. 2001). Regardless of the Sweeney Group's background, Wong's financial interest in the case and his decision to retain a nationally-recognized, experienced securities litigation firm entitled him to the statutory "presumption" of lead plaintiff. Without any "proof" of inadequacy from the Sweeney Group, the Court should have applied the statutory presumption in the PSLRA and granted his motion. The Court committed a clear error of law by failing to do so.

## II.    LEGAL STANDARD

Pursuant to Local Civil Rule 6.3, "a notice of motion for reconsideration or reargument of a court order determining a motion shall be served within fourteen (14) days after the entry of the Court's determination of the original motion, or in the case of a court order resulting in a judgment,

within fourteen (14) days after the entry of the judgment." A motion for reconsideration should be granted to "correct a clear error" of law. *Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003); *see also Stichting Ter Behartiging Van de Belangen Van Oudaandeelhouders In Het Kapitaal Van Saybolt International B.V. v. Schreiber*, 407 F.3d 34, 44 (2d Cir. 2005) ("[A] district court's discretion to reconsider its own decisions is limited, at least absent an intervening change of law, to circumstances in which new evidence is available, an error must be corrected, or manifest injustice would otherwise ensue.").

## III.   ARGUMENT

### A.   The PSLRA Provides a Three-Step Process for Appointing the Lead Plaintiff.

Congress enacted the PSLRA in 1995 to restore order to class action practice under the federal securities laws. *See In re Oxford Health Plans, Inc., Sec. Litig.*, 182 F.R.D. 42, 43 (S.D.N.Y. 1998) (citing S. Rep. No. 104-98 (1995) reprinted in 1996 U.S.C.C.A.N. 679). With respect to selecting lead plaintiffs, the statute abolished the lawyer-driven "race to the courthouse" and replaced it with a regimented three-step process for courts to follow when selecting a lead plaintiff. *Id*. at 43-44. For twenty-five years now, district courts throughout the country have adhered to this process with near-absolute consistency. Mandamus review has rarely been necessary, which is remarkable given the number of lead plaintiff motions filed.

The PSLRA's three-step process is as follows: (1) identify the movant with the "largest financial interest in the relief sought by the class," *i.e.*, the movant with the largest loss; (2) with respect to that movant, "the court shall adopt a presumption" that that movant is the "most adequate plaintiff" to serve as the lead plaintiff if he or she "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure," *i.e.*, typicality and adequacy; and (3) once the "presumption" is triggered, allow other movants to rebut it with "proof" of inadequacy or a unique defense. 15 U.S.C. §78u-4(a)(3)(B)(iii).

The process is rigid and mechanical, and for good reason. It prevents courts from becoming mired in a "beauty contest" between the various movants. "Once the presumption is triggered, the question is not whether another movant might do a better job of protecting the interests of the class

3

than the presumptive lead plaintiff; instead, the question is whether anyone can prove that the presumptive lead plaintiff will not do a 'fair[] and adequate[]' job. We . . . stress that *the inquiry is not a relative one*." *Cendant*, 264 F.3d at 268 (emphasis added); *see also Cavanaugh*, 306 F.3d at 732 (That the district court believes another plaintiff may be 'more typical' or 'more adequate' is of no consequence. So long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, he is entitled to lead plaintiff status, *even if the district court is convinced that some other plaintiff would do a better job*.") (emphasis added). Though decided by the Third and Ninth Circuits, courts within this District have routinely relied on *Cavanaugh* and *Cendent* given their comprehensive analysis of the PSLRA's provisions concerning the lead plaintiff process. *See*, *e.g.*, *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 535 (S.D.N.Y. 2015); *Sofran v. LaBranche & Co.*, 220 F.R.D. 398, 402 (S.D.N.Y. 2004).

**B.      The Burden for Showing "Adequacy" at the Lead Plaintiff Stage Is Minimal.**

This District has adjudicated *hundreds* of lead plaintiff motions under the PSLRA since its enactment in 1995. From that expansive universe of precedent, it has been held time and time again that a movant need only make a "preliminary showing" of adequacy to trigger the presumption of most adequate plaintiff. *See*, *e.g.*, *Khunt*, 102 F. Supp. 3d at 536 (" . . . in deciding a motion to serve as lead plaintiff, [t]he moving plaintiff must make only a preliminary showing that the adequacy and typicality requirements under Rule 23 have been met. In fact, a wide ranging analysis under Rule 23 is not appropriate [at this initial stage of the litigation] and should be left for consideration of a motion for class certification." (internal quotations and citations omitted)). Indeed, in virtually every single instance, courts in this District have held that "[t]he adequacy requirement will be satisfied where (1) class counsel is qualified, experienced and generally able to conduct the litigation; (2) the class members [do] not have interests that are antagonistic to one another; and (3) the class has a sufficient interest in the outcome of the case to ensure vigorous adequacy." *Weltz v. Lee*, 199 F.R.D. 129, 133 (S.D.N.Y. 2001); *accord Khunt*, 102 F. Supp. 3d at 536; *In re Facebook, Inc.*, 288 F.R.D. 26, 37 (S.D.N.Y. 2012); *Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 253 (S.D.N.Y. 2003).

Movants typically meet their *prime facie* burdens on "adequacy" by retaining counsel with "experience prosecuting securities class actions," having a "financial interest" in the lawsuit large enough to "ensure vigorous advocacy," and presenting no evidence of "interests that are adverse to those of the class members." *See Gronich v. Omega Healthcare Inv'rs., Inc.*, No. 17 Civ. 8983 (NRB), 2018 U.S. Dist. LEXIS 51934, at *9-10 (S.D.N.Y. Mar. 27, 2018) (Buchwald, J.); *see also*, *e.g.*, *In re Barrick Gold Corp. Sec. Litig.*, No. 17 Civ. 3507 (NRB), 2017 U.S. Dist. LEXIS 173871, at *6-7 (S.D.N.Y. Oct. 4, 2017) (Buchwald, J.); *Atwood v. Intercept Pharm., Inc.*, 299 F.R.D. 414, 416-17 (S.D.N.Y. 2014) (Buchwald, J.). This is necessarily a low burden, as it "would make little sense" if a movant was required to "'prove' that it satisfied Rule 23 in order to get the benefit of the lead plaintiff presumption, because that would create a situation in which the only way to rebut the presumption would be to 'disprove' something that the presumptively most adequate plaintiff had already 'proved.'" *See In re Cendant Corp. Litig.*, 264 F.3d at 264.

### C.    The Court Committed Clear Error When It Denied Wong's Motion for Failing to Make a Threshold Showing of Adequacy.

Though the Court held correctly that Wong was the movant with the "largest financial interest" and had successfully made a "*prima facie* showing of typicality" (Order at 5-6), it committed clear error when holding that he failed to meet his burden on adequacy (Order at 6). Wong satisfied the factors typically considered: he retained experienced class counsel specializing that has been appointed as lead counsel in numerous similar cases in this Court and throughout the country; provided no evidence of any interest that could be construed as antagonistic to the class; and he sustained a loss of approximately $863,000, a loss that more than doubled the amounts claimed by the Sweeney Group members individually. *See* Declaration of Shannon L. Hopkins, Dkt. No. 44, Exhibits A, B, and D (attaching certification, loss calculation chart, and firm resume).

By this Court's own precedent, Wong successfully made a *prima facie* showing of adequacy in his opening papers. No further evidence was required to entitle Wong to the presumption of most adequate lead plaintiff. However, to address arguments raised in opposition by the Sweeney Group, Wong went further. The Sweeney Group argued that Wong "provided no

5

information about himself whatsoever, *e.g.*, his investment history, educational background, etc." and thus prevented it and the Court from being able to "ensure that Wong has no conflicts with other Class members." Sweeney Group Opposition, Dkt. No. 73, pp. 2, 7 & n.5; *see also* Sweeney Group Reply, Dkt. No. 77, p. 8 ("The Court cannot determine whether Wong has conflicts with other members of the Class . . . ."). In reply, Wong provided the additional background information that the Sweeney Group requested. This information included, among other things, Wong's place of residence, that he holds a Bachelor of Science degree in Engineering, spent his career working as an engineer, and has over 25 years of experience investing in securities. *See* Declaration of Chi Fung Wong, Dkt. No. 75, ¶2. Wong also affirmed his commitment to serving as the lead plaintiff and, to that end, explained how and why he retained his counsel. *Id.* at ¶¶3-6. Notwithstanding, the Court discounted Wong's evidentiary showing and held that it was "skeptical that Wong -- an individual investor about whom little is known -- possesses the requisite sophistication to serve as lead plaintiff in this action" and "question[ed] whether Wong will meaningfully oversee and control the prosecution of this consolidated class action." Order at 6-7. With this the Court improperly deprived Wong of the statutory presumption that should have been applied in his favor.

Wong's ability to "oversee and control the prosecution" of the lawsuit was never an issue until the Court made it one *sua sponte*. Not one of the ten other competing movants for lead plaintiff (including the Sweeney Group) ever accused Wong of lacking the sophistication necessary to oversee this litigation. At worst, the Sweeney Group simply argued that the Court was unable to evaluate potential "conflicts" without additional background information about Wong. *See* Sweeney Group Reply, Dkt. No. 77, p. 8. Without evidence of or some other factual basis showing that Wong's adequacy was in doubt, the Court's "skeptic[ism]" had no place in the analysis and was legally not capable of undermining what Wong had already submitted in support of his *prima facie* showing of adequacy.[1]

---

[1] If skepticism was warranted in any capacity, it should have been directed towards the Sweeney Group and the fact that its members had no pre-litigation relationship. *See Galmi v. Teva Pharm. Indus.*, 302 F. Supp. 3d 485, 493 (D. Conn. 2017) ("When group members have limited or no prior relationship, however, courts look ***skeptically*** at whether the grouping operates to circumvent the

The cases cited by the Court in its Order make this point clear. In *Karp v. Diebold Nixdorf, Inc.*, the court held that the movant with the largest financial interest in the litigation failed to make the requisite "preliminary showing" of adequacy under Rule 23 because, importantly, the movant's motion papers contained a significant error that "struck at the core of the PSLRA's lead plaintiff inquiry: determining which movant holds the largest financial stake in the litigation." No. 19 Civ. 6180(LAP), 2019 U.S. Dist. LEXIS 188670, at *16-17 (S.D.N.Y. Oct. 30, 2019). Although the movant "provided the Court with little to go on with respect to their alleged capacity to manage [the] litigation," the determinative fact was that the movant had "exaggerated" its claimed financial loss by "some 34%" and then waited "nearly two weeks" to correct the error "despite the relative importance" of it. *Id*. at *17. The court held, "Taken together, these issues indicate to the Court a 'certain carelessness about detail that undermines the adequacy' of the [movant] as a lead plaintiff in a complex securities class action." *Id*. at *17-18.

No such mistake or error was made by Wong in his submission. To the contrary, he did not inflate his financial loss in any capacity, which was more than double the size of the Sweeney Group's members individually. If anything, Wong's loss of $863,443.56 is staggering in size and ensures that he "will play a meaningful role in limiting the 'lawyer-driven litigation that the PSLRA was designed to curtail.'" Order at 4 (quoting *Iron Workers Local No. 25 Pension Fund v. Credit-Based Asset Servicing & Securitization, LLC*, 616 F. Supp. 2d 461, 464 (S.D.N.Y. 2009) ("The theory of these provisions was that if an investor with a large financial stake in the litigation was made lead plaintiff, such a plaintiff - frequently a large institution or otherwise sophisticated investor - would be motivated to act like a 'real' client, carefully choosing counsel and monitoring counsel's performance to make sure that adequate representation was delivered at a reasonable price." (internal quotations omitted))).

---

purposes of the PSLRA." (emphasis added)); *In re Petrobras Sec. Litig.*, 104 F. Supp. 3d 618, 621 (S.D.N.Y. 2015) ("Although the PSLRA expressly permits the Court to appoint a "group of persons" to serve as lead plaintiff, many courts, including this one, are skeptical of such arrangements when they are the product of an artificial grouping designed merely to qualify as lead plaintiff under the PSLRA.") (collecting cases).

The Court also cited *Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. LaBranche & Co.*, 229 F.R.D. 395 (S.D.N.Y. 2004), when holding that Wong failed to make his "preliminary showing" of adequacy. Order at 6-7. *Pirelli*, however, underscores this Court's error in the Order. In pertinent part, the court held that the movants with the largest financial interests in the litigation were "entitled to the most adequate plaintiff presumption" because they (*i*) "alleged significant injury and each has filed both a complaint and a motion to be appointed lead plaintiff, demonstrating an interest in the outcome of the litigation," (*ii*) "retained competent counsel," and (*iii*) there was "no indication in the papers . . . that either has interests antagonistic to those of the proposed class." *Pirelli*, 229 F.R.D. at 413. On this and this alone, the court applied the PSLRA's statutory "presumption" in favor of the movants and appointed them lead plaintiffs.

Wong made the same basic showing as the lead plaintiffs in *Pirelli* (except for filing a complaint). Therefore, if the Court had intended to follow *Pirelli*, it should have applied the "presumption" of lead plaintiff in Wong's favor. Indeed, the court in *Pirelli* emphasized the minimal nature of the evidentiary burden when it rejected the argument that one of the movants "cannot meet the standards set forth in Fed. R. Civ. P. 23(a) insofar as it has failed to provide sufficient information about itself." *Id*. at 414. The court held, "Where, as here, a movant has filed a certification pursuant to 15 U.S.C. § 78u-4(a)(2)(A) providing certain basic information, a failure to provide more detailed information does not, in and of itself, represent proof that the movant will not fairly and adequately protect the interest of the class." *Id*. (footnote omitted).

The Court also cited *Blackmoss Investments, Inc. v. ACA Capital Holdings, Inc.*, 252 F.R.D. 188, 191 (S.D.N.Y. 2008), for the premise that it should consider additional factors when assessing adequacy, such as "the available resources and experience of the proposed lead plaintiff." Order at 4. *Blackmoss*, however, does not alter the test for "adequacy" or change what a movant needs to proffer. In fact, the court in *Blackmoss* applied the "presumption" of lead plaintiff in favor of a movant based on nothing other than the movant's "certification" which indicated his "willingness to serve as Lead Plaintiff" and a finding of "no apparent potential conflicts between [the movant] and other class members." *Id*. The additional discussion used by the court in

*Blackmoss* to describe the "adequacy" factors was dicta that itself originated from dicta in *Pirelli* explaining the practical advantages of appointing two movants to serve as co-lead plaintiffs. *Pirelli*, 229 F.R.D. at 417-18. Even in that dicta though, the court in *Pirelli* makes clear that the lack of "any experience acting as a lead plaintiff in a securities class action" does not "suffice[] to rebut the presumption of [a movant's] adequacy." *Id*. at 418.[2]

**D.      The Court Compounded Its Error by Comparing Wong and the Sweeney Group, and Selecting Who It Thought Was the Better Movant.**

After incorrectly discounting Wong's evidentiary showing, the Court then compared and contrasted him with the Sweeney Group before ultimately arriving at the conclusion that the latter would do a better job representing the class. In pertinent part, the Court held that, "By contrast, Medley and Sweeney, who are next in line to become lead plaintiff given their claimed losses of $661,789.41, have submitted a joint declaration that offers detailed information in support of their adequacy under Rule 23. . . . In light of their claimed losses and the additional information provided regarding their capacity to manage this litigation, the Court concludes that Medley and Sweeney are presumptively the lead class plaintiffs." Order at 7-8.

This was prohibited under the PSLRA. *See In re Cavanaugh*, 306 F.3d at 732 ("So long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, he is entitled to lead plaintiff status, even if the district court is convinced that some other plaintiff would do a better job."); *accord Chahal v. Credit Suisse Grp. AG*, No. 18-CV-02268 (AT)(SN), 2018 U.S. Dist. LEXIS 104185, at *8 (S.D.N.Y. June 21, 2018); *Nurlybaev v. ZTO Express (Cayman) Inc.*, No. 17-CV-06130 (LTS)(SN), 2017 U.S. Dist. LEXIS 187238, at *4 (S.D.N.Y. Nov. 13, 2017); *Khunt*, 102 F. Supp. 3d at 535-36; *Vladimir v. Bioenvision*, No. 07 Civ. 6416 (SHS) (AJP), 2007 U.S. Dist. LEXIS 93470, at *22 (S.D.N.Y. Dec. 21, 2007); *Pirelli*, 229 F.R.D. at 411-12. While the Sweeney Group consists of a small business owner and a lawyer who was previously a partner

---

[2] Indeed, the PSLRA actively discourages experienced plaintiffs from seeking repeated appointments as lead plaintiff by imposing "restrictions on professional plaintiffs" by preventing the appointment of a movant as lead plaintiff in more than five class actions in a three year period. 15 U.S.C. § 78u-4(a)(3)(B)(vi).

at a law firm (Order at 7), those facts were irrelevant to the lead plaintiff analysis once Wong triggered the statutory presumption of "most adequate plaintiff."

To the extent the Court could have considered the Sweeney Group's background at all, it would have been in the context of rebutting the presumption in Wong's favor. 15 U.S.C. §78u-4(a)(3)(B)(iii)(II). However, information about the Sweeney Group's adequacy has no bearing on Wong's alleged inadequacy. Given that "proof" of inadequacy was what would have been required, the Sweeney Group's background would have had no impact on the analysis. *See Pirelli*, 229 F.R.D. at 415 (". . . a failure to provide more detailed information does not, in and of itself, represent proof that the movant will not fairly and adequately protect the interest of the class."); *Sofran*, 220 F.R.D. at 403 (rejecting argument that "certifications provided by [movants] are inadequate to demonstrate their understanding of the litigation and their willingness to serve as lead plaintiffs").

The Court compared Wong to the Sweeney Group and, in so doing, engaged in the precise type of "beauty contest" that Congress sought to do away with when it enacted the PSLRA. Even when movants have engaged in criminal behavior, they are often still found adequate to serve as the lead plaintiff. *See Pirelli*, 229 F.R.D. at 416 (appointing lead plaintiff in spite of "censure[] . . . for violations of the Chicago Mercantile Exchange" relating to market manipulation). To disqualify Wong for not having the same professional background as some members of the Sweeney Group constituted a "clear error" of law in contravention of the PSLRA.

IV.    CONCLUSION

For the reasons set forth above, Wong respectfully requests that the Court grant his motion in its entirety.

10

DATED: March 10, 2020

Respectfully Submitted,

**LEVI & KORSINSKY, LLP**

*/s/ Adam M. Apton*
Nicholas I. Porritt
Adam M. Apton

55 Broadway, 10th Floor
New York, NY 10006
Tel.: (212) 363-7500
Fax: (212) 363-7171
Email: nporritt@zlk.com
Email: aapton@zlk.com

*Attorneys for Chi Fung Wong*

11