**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re HEXO Corp. Securities Litigation | Case No.: 1:19-cv-10965-NRB<br><br>Hon. Naomi Reice Buchwald |

**MOVANT CHI FUNG WONG'S MEMORANDUM OF LAW**
**IN REPLY AND FURTHER SUPPORT OF MOTION FOR RECONSIDERATION**

Nicholas I. Porritt
Adam M. Apton
LEVI & KORSINSKY, LLP
55 Broadway, 10th Floor
New York, NY 10006
Tel.: (212) 363-7500
Fax: (212) 363-7171
Email: nporritt@zlk.com
Email: aapton@zlk.com

*Attorneys for Chi Fung Wong*

**TABLE OF CONTENTS**

I.    INTRODUCTION .................................................................................................... 1

II.   ARGUMENT .......................................................................................................... 3

      A.    The Court Committed "Clear Error" by Failing to Follow the Applicable Law. ... 3

      B.    The Court Applied a Legally Incorrect Standard when Evaluating Wong's *Prima Facie* Showing of Adequacy .................................................................................. 3

      C.    The Court's "Beauty Contest" between Wong and the Sweeney Group Constituted a Clear Error of Law. ........................................................................................ 6

III.  CONCLUSION ........................................................................................................ 8

**TABLE OF AUTHORITIES**

**Cases**

*Baldwin v. Net 1 Ueps Techs.*,
No. 19-cv-11174 (PKC), 2020 U.S. Dist. LEXIS 53522 (S.D.N.Y. Mar. 25, 2020) .............. 3

*In re Barrick Gold Corp. Sec. Litig.*,
No. 17 Civ. 3507 (NRB), 2017 U.S. Dist. LEXIS 173871 (S.D.N.Y. Oct. 4, 2017)............... 4

*Blackmoss Investments, Inc. v. ACA Capital Holdings, Inc.*,
252 F.R.D. 188 (S.D.N.Y. 2008) ...................................................................................... 1, 4, 6

*Brady v. Top Ships Inc.*,
324 F. Supp. 3d 335 (E.D.N.Y. 2018) ..................................................................................... 8

*In re Cavanaugh*,
306 F.3d 726 (9th Cir. 2002) ............................................................................................... 2, 7

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001)................................................................................................. 2, 7

*Chahal v. Credit Suisse Grp. AG*,
No. 18-CV-02268 (AT)(SN), 2018 U.S. Dist. LEXIS 104185 (S.D.N.Y. June 21, 2018)....... 8

*In re eSpeed, Inc. Sec. Litig.*,
232 F.R.D. 95 (S.D.N.Y. 2005) ............................................................................................ 4, 6

*Finocchiaro v. NQ Mobile, Inc.*,
No. 15 Civ. 6385 (NRB), 2017 U.S. Dist. LEXIS 63017 (S.D.N.Y. Apr. 17, 2017) .............. 4

*Foley v. Transocean Ltd.*,
272 F.R.D. 126 (S.D.N.Y. 2011) ...................................................................................... 3, 4, 6

*Gasperini v. Ctr. for Humanities*,
149 F.3d 137 (2d Cir. 1998)..................................................................................................... 3

*Gronich v. Omega Healthcare Inv'rs., Inc.*,
No. 17 Civ. 8983 (NRB), 2018 U.S. Dist. LEXIS 51934 (S.D.N.Y. Mar. 27, 2018)............... 3

*Karp v. Diebold Nixdorf, Inc.*,
No. 19 Civ. 6180(LAP), 2019 U.S. Dist. LEXIS 188670 (S.D.N.Y. Oct. 30, 2019) ... 1, 4, 5, 6

*Khunt v. Alibaba Grp. Holding Ltd.*,
102 F. Supp. 3d 523 (S.D.N.Y. 2015)................................................................................... 6, 8

*Nurlybaev v. ZTO Express (Cayman) Inc.*,
No. 17-CV-06130 (LTS)(SN), 2017 U.S. Dist. LEXIS 187238 (S.D.N.Y. Nov. 13, 2017) .... 8

*Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*,
  322 F.3d 147 (2d Cir. 2003)...................................................................................... 3

*In re Oxford Health Plans, Inc. Sec. Litig.*,
  182 F.R.D. 42 (S.D.N.Y. 1998) .............................................................................. 4

*Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. LaBranche & Co.*,
  229 F.R.D. 395 (S.D.N.Y. 2004) ............................................................... 1, 4, 5, 6

*Porzio v. Overseas Shipholding Grp.*,
  No. 12 Civ. 7948, 2013 U.S. Dist. LEXIS 14463 (S.D.N.Y. Feb. 1, 2013) ............................ 8

*Repex Ventures v. Madoff*,
  No. 09 Civ. 289 (RMB) (HBP), 2009 U.S. Dist. LEXIS 141393 (S.D.N.Y. Oct. 5, 2009) ..... 8

*Simmons v. Spencer*,
  No. 13 Civ. 8216 (RWS), 2014 U.S. Dist. LEXIS 58743 (S.D.N.Y. Apr. 24, 2014)............... 6

## Other Authorities

Black's Law Dictionary (11th ed. 2019).................................................................... 3

## I.     INTRODUCTION

Wong moved for reconsideration of the Court's Order because the Court's holding violated the PSLRA and decades of precedent from within this District. Although Wong had the "largest financial interest" in the litigation, retained experienced counsel, and had no conflicts with the rest of the class, the Court refused to apply the statutory presumption of "most adequate plaintiff" in his favor and, instead, selected the Sweeney Group to serve as lead plaintiff because "[b]y contrast" the Sweeney Group appeared better suited to serve as the lead plaintiff. Order at 6-8. The Court's Order contradicted all applicable law on this issue and for that reason constituted a "clear error" that now requires reconsideration.

In opposition to Wong's motion, the Sweeney Group completely overlooks the Court's dramatic break from precedent and attempts to fortify the Order by relying simply on case law stating that reconsideration should rarely occur. That point does not change the fact that the Court committed a "clear error" and that reconsideration is necessary. The movant with the "largest financial interest" in the litigation need only make a "preliminary" showing of typicality and adequacy to trigger the presumption of "most adequate plaintiff" in its favor. Over the twenty-five years since the PSLRA was enacted, courts within this district have uniformly held that the "preliminary" showing of adequacy is satisfied by having a substantial financial interest in the litigation, retaining competent counsel to litigate the action, and not having any interests adverse to the class. Even without the declaration he submitted containing additional information about his investment experience and professional background, Wong's loss of $863,443 and his decision to retain an experienced securities litigation firm should have been enough to satisfy this burden. According to the Court, it was not.

The Court primarily relied on three decisions for support in its Order: (1) *Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. LaBranche & Co.*, 229 F.R.D. 395 (S.D.N.Y. 2004); (2) *Blackmoss Investments, Inc. v. ACA Capital Holdings, Inc.*, 252 F.R.D. 188 (S.D.N.Y. 2008); and (3) *Karp v. Diebold Nixdorf, Inc.*, No. 19 Civ. 6180(LAP), 2019 U.S. Dist. LEXIS 188670 (S.D.N.Y. Oct. 30, 2019). As Wong explained in his opening motion papers, however, these

decisions do not provide a legal basis for the Court's decision. To the contrary, they stand for the premise that "size, available resources, or even experience of a candidate" are not dispositive when appointing a lead plaintiff and should not interfere with the court's initial assessment of whether a movant has sufficiently made its *prima facie* showing of adequacy. The Sweeney Group ignores this critical aspect of the case law and instead argues that these cases impose a heightened *prima facie* burden upon any and all movants for lead plaintiff. That is not correct.

Finally, the Court openly compared and contrasted Wong with the Sweeney Group on the basis of adequacy, which is strictly prohibited under the PSLRA and all leading authority. Despite this, the Sweeney Group summarily argues otherwise and claims that comparisons are permitted regardless of what the authority says. That is clear error. First, the statutory scheme of the PSLRA makes clear that movants are not to be compared on the basis of adequacy in the first instance. If, and only if, a competing movant has proffered proof that the presumptive lead plaintiff is inadequate, then a court can examine whether and to what extent a party is incapable of serving as the lead plaintiff. Second, the notion that case law condones these sort of "beauty contests" on the basis of adequacy is explicitly and flatly rejected by the seminal cases *In re Cavanaugh*, 306 F.3d 726 (9th Cir. 2002), and *In re Cendant Corp. Litigation*, 264 F.3d 201 (3d Cir. 2001). Courts throughout the country, including this District, adhere strictly to these two cases given their thorough and detailed analysis of the PSLRA's application in the lead plaintiff setting.

In sum, the Sweeney Group fails to provide a sound justification for the Court's Order. If anything, its arguments in opposition underscore Wong's reasons for moving for reconsideration in the first place. Accordingly, Wong respectfully requests that the Court grant his motion in its entirety and appoint him and his counsel as lead plaintiff and lead counsel as required under the terms of the PSLRA and governing caselaw.

## II.    ARGUMENT

### A.    The Court Committed "Clear Error" by Failing to Follow the Applicable Law.

Reconsideration should be granted to correct a "clear error." *See*, *e.g.*, *Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003). A "clear error" exists when a court's holding is unquestionably contrary to or unsupported by the applicable law. *See Gasperini v. Ctr. for Humanities*, 149 F.3d 137, 142 (2d Cir. 1998) (new trial warranted where decision results from "erroneous view of the law"); *see also* 2 Error, Black's Law Dictionary (11th ed. 2019) ("A trial judge's decision or action that appears to a reviewing court to have been unquestionably erroneous."). While the Sweeney Group argues at length that reconsideration is rarely granted (Sweeney Opp. at 1, 4-5), it nonetheless is appropriate here in light of the fact that the Court's holding contradicted the law applicable to appointing lead plaintiffs under the PSLRA.

### B.    The Court Applied a Legally Incorrect Standard when Evaluating Wong's *Prima Facie* Showing of Adequacy.

Over the past 25 years, courts within the Southern District of New York have adjudicated more lead plaintiff motions than nearly any other district in the country. Although the decisions vary in terms of detail and analysis, none requires the additional level of proof that this Court imposed upon Wong in its Order. Almost uniformly, the lead plaintiff movant met its *prima facie* burden by having a substantial financial interest in the outcome of the litigation, selecting competent counsel to serve as lead counsel, and not presenting any interests or conflicts adverse to the class. *See*, *e.g.*, *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 131 (S.D.N.Y. 2011). The evidentiary showing in support of this *prima facie* burden consists of nothing more than the movant's PSLRA certification, a calculation of the movant's damages, and a resume or curriculum vitae from the movant's counsel showing its experience in the field of securities litigation. *See*, *e.g.*, *Baldwin v. Net 1 Ueps Techs.*, No. 19-cv-11174 (PKC), 2020 U.S. Dist. LEXIS 53522, at *8 (S.D.N.Y. Mar. 25, 2020); *Gronich v. Omega Healthcare Inv'rs., Inc.*, No. 17 Civ. 8983 (NRB), 2018 U.S. Dist. LEXIS 51934, at *9-10 (S.D.N.Y. Mar. 27, 2018) (Buchwald, J.); *In re Barrick*

3

*Gold Corp. Sec. Litig.*, No. 17 Civ. 3507 (NRB), 2017 U.S. Dist. LEXIS 173871, at *6-7 (S.D.N.Y. Oct. 4, 2017) (Buchwald, J.); *Finocchiaro v. NQ Mobile, Inc.*, No. 15 Civ. 6385 (NRB), 2017 U.S. Dist. LEXIS 63017, at *3-4 (S.D.N.Y. Apr. 17, 2017) (Buchwald, J.); *In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 103 (S.D.N.Y. 2005); *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 50 (S.D.N.Y. 1998).

In stark contrast to this wealth of case law, the Sweeney Group in opposition to this motion relies on three cases to show that the Court did not err and that additional evidence of "adequacy" is necessary to satisfy the *prima facie* burden: (1) *Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. LaBranche & Co.*, 229 F.R.D. 395 (S.D.N.Y. 2004); (2) *Blackmoss Investments, Inc. v. ACA Capital Holdings, Inc.*, 252 F.R.D. 188 (S.D.N.Y. 2008); and (3) *Karp v. Diebold Nixdorf, Inc.*, No. 19 Civ. 6180(LAP), 2019 U.S. Dist. LEXIS 188670 (S.D.N.Y. Oct. 30, 2019). As Wong explained in his opening motion papers, these cases do not raise the burden of proof for a movant and do not require movants to provide evidence of available resources and/or experience managing litigation. Instead, they comport with the overwhelming amount of precedent already in place holding that a movant need only make a "preliminary showing" of adequacy for the purposes of satisfying its *prima facie* burden, a showing that has consistently been satisfied simply by filing a PSLRA certification, loss calculation, and firm resume showing a substantial financial interest, selection of competent counsel, and the absence of any conflicts with the rest of the class. *See Foley*, 272 F.R.D. at 131.

In opposition, the Sweeney Group disputes Wong's analyses of these cases. Regarding *Pirelli*, the Sweeney Group contends that "the size, available resources or even experience of a candidate" should be considered when deciding whether a movant has satisfied its *prima facie* burden. Sweeney Group Opp. at 9 (citing *Pirelli*, 229 F.R.D. at 417). This is **not** what *Pirelli* holds. In fact, when deciding whether the movants had satisfied their *prima facie* showing of "adequacy," the court in *Pirelli* held as follows: "CalPERS and Empire have alleged significant injury and each has filed both a complaint and a motion to be appointed lead plaintiff, demonstrating an interest in the outcome of the litigation. As discussed *infra*, both CalPERS and Empire have retained

4

competent counsel. There is also no indication in the papers submitted on this motion by CalPERS or Empire that either has interests antagonistic to those of the proposed class. In light of the foregoing, both CalPERS and Empire are entitled to the most adequate plaintiff presumption." *Pirelli*, 229 F.R.D. at 413. The language quoted and relied upon by the Sweeney Group comes from dicta later in the court's decision when it was weighing whether the competing movants had proffered enough evidence to successfully rebut the presumption that was already in CalPERS' and Empire's favor. *Id.* at 417-18 (holding that absence of "in-house legal department nor any experience acting as a lead plaintiff in a securities class action" was insufficient to "rebut the presumption of Empire's adequacy"). The Sweeney Group presented no evidence challenging Wong's adequacy here and, therefore, this portion of the *Pirelli* decision is inapposite.

*Karp*, like *Pirelli*, states in dicta that "[w]hile the 'size, available resources, or even experience of a candidate are not dispositive factors in appointing a lead plaintiff, they are nonetheless relevant to reaching a determination as to whether a candidate will be capable of adequately protecting the interests of the class.'" *Karp*, 2019 U.S. Dist. LEXIS 188670, at *16 (quoting *Pirelli*, 229 F.R.D. at 417-18). The Sweeney Group seizes on this language in an attempt to show that Wong's alleged inexperience managing litigation renders him inadequate. Sweeney Group Opp. at 9. *Karp* does not stand for that proposition, however. It relies entirely on *Pirelli*, which clearly holds that inexperience managing litigation neither prevents a movant from carrying its *prima facie* burden nor rebuts the presumption once it is triggered. *Pirelli*, 229 F.R.D. at 413, 417-18. Moreover, while the court in *Karp* considered the movant's lack of experience, it did so in conjunction with the serious errors contained in the movant's motion and ultimately held that, "[t]aken together, these issues indicate to the Court a certain carelessness about detail that undermines the adequacy" of the movant. *Karp*, 2019 U.S. Dist. LEXIS 188670, at *17-18 (internal quotations omitted). Unlike the movant in *Karp*, Wong committed no such errors in his motion or supporting papers and, accordingly. any lack of experience  is not  dispositive. *Pirelli*, 229 F.R.D. at 417-18.

5

*Blackmoss*, like *Pirelli* and *Karp*, contains the same language concerning "size, available resources, or even experience of a candidate . . . ." *Blackmoss*, 252 F.R.D. at 191. Significantly, although the court in *Blackmoss* recited this language when discussing the standard for adequacy, it held that the movant met its *prima facie* burden based on nothing other than a "certification" indicating a "willingness to serve as Lead Plaintiff" and the absence of any "apparent potential conflicts between [the movant] and other class members." *Id*. at 191. Therefore, applying the same standard as was applied in *Blackmoss* in this case, as urged by the Sweeney Group, Wong would be appointed lead plaintiff as Wong presented ***exactly*** the same evidence as the successful movant in *Blackmoss*.

The precedent on this issue holds squarely in favor of Wong. To meet his *prima facie* burden, Wong needed only to show that he possessed a substantial financial interest in the litigation, selected competent counsel, and did not have any adverse interests to the rest of the class. *See Foley*, 272 F.R.D. at 131. This burden is met by filing a PSLRA certification, a loss calculation (based on transactions in the certification) and the resume of proposed lead counsel. The cases relied upon by the Court in its Order and by the Sweeney Group in opposition apply the same standard  and do not call for anything different in terms of proof of adequacy for the purposes of triggering the presumption of "most adequate plaintiff." Accordingly, under both the precedent cited by both Wong and the Sweeney Group, Wong is the presumptive lead plaintiff under the PSLRA. The Court's failure to apply this presumption to Wong thus constitutes clear error.

C.     **The Court's "Beauty Contest" between Wong and the Sweeney Group Constituted a Clear Error of Law.**

In the absence of controlling Second Circuit authority, Courts within the Southern District of New York routinely look to *Cendant* and *Cavanaugh* for guidance when deciding lead plaintiff decisions. *See*, *e.g.*, *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 535-36 (S.D.N.Y. 2015); *Simmons v. Spencer*, No. 13 Civ. 8216 (RWS), 2014 U.S. Dist. LEXIS 58743, at *14, 17 (S.D.N.Y. Apr. 24, 2014); *In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. at 98-99; *Pirelli*, 229 F.R.D. at 411. This also reflects the thorough and thoughtful analyses of the PSLRA, its purposes, and

6

their application to the lead plaintiff appointment process undertaken by both the Third and Ninth Circuits in these decisions. *See In re Cavanaugh*, 306 F.3d 726; *In re Cendant Corp. Litig.*, 264 F.3d 201.

Importantly, as they relate to the issues at hand, *Cendant* and *Cavanaugh* explicitly prohibit courts from engaging in the "beauty contest" that arises when various movants are compared and contrasted against one another. Indeed, "[o]nce the presumption is triggered, the question is not whether another movant might do a better job of protecting the interests of the class than the presumptive lead plaintiff; instead, the question is whether anyone can prove that the presumptive lead plaintiff will not do a 'fair[] and adequate[]' job. We . . . stress that ***the inquiry is not a relative one***." *In re Cendant Corp. Litig.*, 264 F.3d at 268 (emphasis added); *see also In re Cavanaugh*, 306 F.3d at 732 ("That the district court believes another plaintiff may be 'more typical' or 'more adequate' is of no consequence. So long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, he is entitled to lead plaintiff status, ***even if the district court is convinced that some other plaintiff would do a better job***.") (emphasis added).

Wong emphasized this point in his opening motion papers. In response, the Sweeney Group simply argues that the Court did not "inappropriately turn[] the adequacy analysis into a 'beauty contest'" and that, even if it did, such a "comparative analysis" is not "improper" because *Cendant* and *Cavanaugh* are not binding upon this Court. Sweeney Group Opp. at 12-13 & n.9. The Sweeney Group is wrong in both respects. First, as written, the Order shows that the Court compared Wong with the Sweeney Group and decided that the latter was better suited to manage the litigation. Order at 6-8 ("By contrast, Medley and Sweeney, who are next in line to become lead plaintiff given their claimed losses of $661,789.41, have submitted a joint declaration that offers detailed information in support of their adequacy under Rule 23."). In fact, the Court never held that Wong was ***not*** adequate, only that the Sweeney Group was ***more*** adequate. *Id*.

Second, there is no exception within the Southern District to the PSLRA's blanket prohibition against comparative analyses (*i.e.*, "beauty contests"). Courts within this District have cited *Cendant* and *Cavanaugh* repeatedly for this precise proposition. *See*, *e.g.*, *Chahal v. Credit*

7

*Suisse Grp. AG*, No. 18-CV-02268 (AT)(SN), 2018 U.S. Dist. LEXIS 104185, at *8 (S.D.N.Y. June 21, 2018); *Nurlybaev v. ZTO Express (Cayman) Inc.*, No. 17-CV-06130 (LTS)(SN), 2017 U.S. Dist. LEXIS 187238, at *4 (S.D.N.Y. Nov. 13, 2017); *Khunt*, 102 F. Supp. 3d at 535-36; *Porzio v. Overseas Shipholding Grp.*, No. 12 Civ. 7948, 2013 U.S. Dist. LEXIS 14463, at *9 (S.D.N.Y. Feb. 1, 2013); *Repex Ventures v. Madoff*, No. 09 Civ. 289 (RMB) (HBP), 2009 U.S. Dist. LEXIS 141393, at *30 (S.D.N.Y. Oct. 5, 2009). Indeed, the only case cited by the Sweeney Group in support of its argument on this point is one from outside this District, *Brady v. Top Ships Inc.*, 324 F. Supp. 3d 335 (E.D.N.Y. 2018). But even that case makes clear that comparison between movants has no role in the analysis of whether a movant has met its *prima facie* burden in the first instance; it is only relevant when determining if a competing movant has successfully rebutted a presumption in favor of another movant. *See id.* at 346 ("Additionally, based on the two remaining movant groups' submissions, the Court has compared the adequacy of both proposed groups, and finds that Nardiello and Wang's arguments ***do not justify departing from the presumption in favor of the group with the largest financial interest*** (the Top Ships Investor Group)." (emphasis added)).[1]

## III.   CONCLUSION

For the reasons set forth above, Wong respectfully requests that the Court reconsider its decision to deny Wong's motion and appoint him and his counsel as lead plaintiff and lead counsel in this action.

---

[1] Though not relevant to this immediate point, it is worth noting that the court in *Brady* held in its favor of a movant that, in its opinion, could have provided additional "helpful" information because such information was "not required." *Id.* at 347-48. That determination holds true here where Wong was effectively penalized for failing to provide information that was not and is not required under applicable law.

DATED: March 30, 2020                    Respectfully Submitted,

                                         **LEVI & KORSINSKY, LLP**

                                         */s/ Adam M. Apton*
                                         Nicholas I. Porritt
                                         Adam M. Apton
                                         55 Broadway, 10th Floor
                                         New York, NY 10006
                                         Tel.: (212) 363-7500
                                         Fax: (212) 363-7171
                                         Email: nporritt@zlk.com
                                         Email: aapton@zlk.com

                                         *Attorneys for Chi Fung Wong*

9