**BERNSTEIN LIEBHARD LLP**
ATTORNEYS AT LAW
10 EAST 40TH STREET
NEW YORK, NEW YORK 10016

————

(212) 779-1414
FAX: (212) 779-3218
www.bernlieb.com

September 14, 2020

**Via ECF**

Honorable Naomi Reice Buchwald, U.S.D.J.
United States District Court
500 Pearl Street
New York, New York 10007-1312

Re:    ***In re HEXO Corp. Securities Litigation*, 1:19-cv-10965-NRB (DCF)**

Dear Judge Buchwald:

We write on behalf of Lead Plaintiffs ("Plaintiffs") in response to Defendants' July 30, 2020 letter outlining their motion to dismiss ("Motion"), which Plaintiffs oppose.[1]  HEXO is a Canadian cannabis company whose most important contract is with the SQDC, a government agency that controls the cannabis industry in Quebec (the "Agreement").   HEXO stated in its Prospectus that under the multi-year Agreement the SQDC (i) committed to buy 20,000 kg (worth $100 million) subject to a take-or-pay clause ("ToP") in the first year; and (ii) was expected to buy 35,000 kg and 45,000 kg in the second and third years.  The ToP's sole purpose was to guarantee revenues – a guarantee amplified by the SQDC's lack of insolvency risk.

Following HEXO's January 2019 IPO, it continued to tout the Agreement's first-year guarantee and expected volumes, which formed the basis for HEXO's issuance of C$400 million net revenue guidance and its acquisition of Newstrike in March 2019.  Meanwhile, SQDC orders were off track by 160% in March and 300% in June.  In June, HEXO CEO St. Louis claimed HEXO would not enforce the ToP because of its "relationship" with the SQDC, but confidently reassured investors that the SQDC would still meet its first-year commitment – slightly late.  In October, HEXO pulled its guidance and reported preliminary Q42019 net revenues 40% below expectations.  HEXO also fired 200 employees, including two senior officers, and its second CFO in six months resigned.  In November, HEXO announced its Niagara facility (acquired through Newstrike) was, in part, operating unlicensed – a fact HEXO knew since July.  In January 2020, HEXO announced a restatement.  Then, in March, after more write-downs and resignations, HEXO announced a C$300 million net loss, "going concern" issues, the sale of the Niagara facility, and that it had relieved the SQDC of its year-one commitment.  Investors lost hundreds of millions of dollars as the alleged fraud unraveled.

---

[1] Definitions are from the Motion.  Undefined terms are defined in, and paragraphs cites are to, the FAC.

00594729;V1

Honorable Naomi Reice Buchwald, U.S.D.J.
September 14, 2020
Page 2

Defendants' Motion should be denied.  The Securities Act Defendants claim they never "affirmatively guarantee[d]" the ToP; HEXO made a business decision in not enforcing the ToP; and HEXO disclosed enough to show the SQDC was behind schedule.[2]  But this Court has found that a ToP is a guarantee; it is unnecessary to guarantee a guarantee.  *See IOP Cast Iron Holdings, LLC v. J.H. Whitney Capital Partners, LLC*, 91 F. Supp. 3d 456, 471 (S.D.N.Y. 2015).  Moreover, the Prospectus failed to warn that the ToP was at risk and that the SQDC was behind in store openings and orders (by 140%).  ¶¶ 185-86.  Further, the Agreement's first year was critical to HEXO so voiding the ToP was no routine decision.  If Defendants' logic is accepted, investors could not rely on any statement (even a guarantee) because companies could irrationally pivot without warning and with impunity.  Finally, the Prospectus only disclosed SQDC orders for two weeks when, as of the IPO, over three months of the Agreement elapsed.  ¶¶ 94-95.  Courts have repeatedly upheld statements in analogous circumstances.  *See*, *e.g.*, *Meyer v. Jinko Solar Holdings Co.*, 761 F.3d 245, 247, 251, & n.3 (2d Cir. 2014) ("existing problems" rendered compliance statements misleading); *IOP*, 91 F. Supp. 3d. at 471 (existing adverse facts about ToP rendered statements actionable under the more onerous Section 10(b)).

The Exchange Act Defendants only challenge falsity and scienter but to no avail.  Defendants misled investors by continuing to tout the Agreement's first-year guarantee and annual expectations – even when orders were 160% and 300% behind as of March and June 2019.  ¶¶ 195-96, 200-01, 213-14, 221-22.  And, after disclosing on June 13, 2019 that HEXO would not enforce the ToP due to its "relationship" with the SQDC (which had not changed since April 2018), St. Louis still "confident[ly]" claimed the SQDC would meet its commitment by the end of 2019 (rather than October 2019) – even as SQDC orders lagged 300% behind.  ¶¶ 231-33.  Likewise, Defendants projected net revenue of C$400 million for FY2020 and C$26 million for Q42019 with "confidence" for seven months.   ¶¶ 190, 202, 210, 217, 225.  This guidance was groundless as the ToP was illusory and SQDC orders were dismal.  ¶¶ 192, 203, 212, 219, 226.

This Court has sustained similar allegations.  In *IOP*, Aarowcast issued projections and represented that no "material customer…had materially and adversely modified its relationship".  *Id*., 91 F. Supp. 3d at 471.  This Court found defendants' statements actionable because excess inventory at CNH, a material customer with a ToP, threatened the contract and the projections' basis.  *Id*. at 471-72.  The Court also found the ToP was a "guaranteed-order contract".  *Id*. at

---

[2] Section 11 imposes strict liability on issuers/signatories, and negligence liability on underwriters, for material misstatements/omissions in a prospectus.  15 U.S.C. § 77k(a).  These claims are subject to Rule 8 where, as here, they do not sound in fraud.  *Lewy v. SkyPeople Fruit Juice, Inc.*, No. 11 Civ. 2700 (PKC), 2012 WL 3957916, at *7 (S.D.N.Y. Sept. 10, 2012).  Plaintiffs also plead valid Section 12(a)(2) claims, and, contrary to Defendants' challenge, have standing to do so because Medley bought shares pursuant to the IPO, and the relevant defendants "were sellers, offerors and/or solicitors of sales of HEXO [] stock[.]"  ¶¶ 50, 339.  That suffices at this stage.  *See Hawaii Structural Ironworkers Pension Tr. Fund v. AMC Entm't Holdings, Inc.*, 422 F.Supp. 3d 821, 856 (S.D.N.Y. 2019).  *See also City of Omaha Police & Fire Ret. Sys. v. Evoqua Water Techs. Corp.*, No. 18-CV-10320 (AJN), 2020 WL 1529371, at *12 ("privity between the buyer and seller is [not] required" when sellers solicit sales for financial gain").

Honorable Naomi Reice Buchwald, U.S.D.J.
September 14, 2020
Page 3

471. Here, Defendants' statements were misleading because the SQDC did not need anywhere near 20,000 kg; the ToP was illusory; and low orders would impact later years. ¶¶ 195-96.[3]

St. Louis also misled investors about licensing at the Niagara facility. *See*, *e.g.*, ¶ 205 (omitting that part of it was operating unlicensed). St. Louis later admitted (*see* ¶¶ 153, 258) that part of the facility was operating without a license – and that HEXO knew of this **since at least July 20, 2019**. ¶ 247. Yet HEXO said nothing for four months. The 10(b) Defendants also made misstatements concerning inventory and impairments. ¶¶ 197-98.

The 10(b) Defendants' other arguments fail. They claim HEXO warned the SQDC *might* change purchasing patterns or HEXO *might* not hit guidance, but these general warnings were not meaningful when the SQDC was *already* radically off track. Further, HEXO never warned investors that the ToP was not a guarantee and might not be enforced. Defendants also wrongly suggest Plaintiffs need insider trading, confidential witness, or internal document allegations to plead scienter. But these are not requirements. *See, e.g., Thomas v. Magnachip Semiconductor Corp.*, 167 F. Supp. 3d 1029, 1044 (N.D. Cal. 2016) (finding scienter where officers sold no stock). Plaintiffs plead adequate facts demonstrating a strong inference of scienter based on detailed allegations of conscious misbehavior. *See* ¶¶ 279-82. Further, while unnecessary, Plaintiffs' motive allegations further strengthen the inference of scienter. *See* ¶¶ 283-87.[4]

---

[3] This Court has noted that "[s]tatements regarding projections…may be actionable under …10(b) … [when] worded as guarantees[.]" *In re Skechers USA, Inc. Sec. Litig.*, 444 F. Supp. 3d 498, 512 (S.D.N.Y. 2020). *See also Galestan v. OneMain Holdings, Inc.,* 348 F. Supp. 3d 282, 299 (S.D.N.Y. 2018) (knowledge of increased loan delinquencies rendered guidance unachievable); *In re Symbol Techs., Inc. Sec. Litig.*, No. 05-CV-3923 DRH AKT, 2013 WL 6330665, at *7 (E.D.N.Y. Dec. 5, 2013) ("forecasts create a duty to disclose materially misleading information").

[4] Defendants also claim a few of their statements are opinions, but for opinions to be protected, they must "fairly align[] with the information in possession" at the time. *Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co.*, No. 19 CIV. 10067 (PAE), 2020 WL 4734989 (S.D.N.Y. Aug. 14, 2020). Here, they did not because they were fatally undermined by current information about SQDC orders. Defendants also try to spin their disclosures as candor. But St. Louis disclosed non-enforcement of the ToP only when forced; HEXO pulled its guidance only when it could no longer hide that it was unachievable; HEXO's restatements and announcements of resignations were required; and HEXO disclosed the Niagara facility was operating unlicensed four months late. This is not candor.

00594729;V1

Honorable Naomi Reice Buchwald, U.S.D.J.
September 14, 2020
Page 4

For these reasons, detailed in Plaintiffs' opposition, the Motion should be denied.[5]

Very truly yours,

/s/ Laurence J. Hasson

Laurence J. Hasson

LJH/js
Enclosure

---

[5] In light of the foregoing, Plaintiffs sufficiently plead control person claims under Section 15 and Section 20.  Defendants assert 20(a) claims require pleading culpable participation, but that is an open question. *See In re WorldCom, Inc. Sec. Litig.*, 294 F. Supp. 2d 392, 415 (S.D.N.Y. 2003). Regardless, since Plaintiffs have pled actual knowledge, they have pled culpable participation.  *See In re Cannavest Corp. Sec. Litig.*, 307 F. Supp. 3d 222, 254 (S.D.N.Y. 2018).

00594729;V1