**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE HEXO CORPORATION SECURITIES LITIGATION | No. 1:19-cv-10965-NRB (DCF)<br><br>**<u>ORAL ARGUMENT REQUESTED</u>** |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF**
**<u>DEFENDANTS' JOINT MOTION TO DISMISS</u>**

NORTON ROSE FULBRIGHT US LLP

Gerard G. Pecht
Todd D. Batson
1301 McKinney, Suite 5100
Houston, Texas 77010-3095
Telephone:  (713) 651-5151
Facsimile:   (713) 651-5246

Peter A. Stokes
98 San Jacinto Boulevard, Suite 1100
Austin, Texas 78701-4255
Telephone:  (512) 536-5287
Facsimile:   (512) 536-4598

*Attorneys for HEXO Corp., Sébastien St-Louis, Michael Monahan, Steve Burwarsh, Adam Miron, Michael Munzar, Jason Ewart, Vincent Chiara, Nathalie Bourque, and Ed Chaplin*

SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP

Jay B. Kasner
Robert A. Fumerton
Michael C. Griffin
One Manhattan West
New York, New York 10001
Telephone:  (212) 735-3000
Facsimile:   (212) 735-2000

*Attorneys for CIBC World Markets Inc., BMO Nesbitt Burns Inc., Oppenheimer & Co. Inc., Altacorp Capital Inc., Beacon Securities Limited, Bryan, Garnier & Co Ltd, Cormark Securities Inc., Eight Capital, GMP Securities L.P., Laurentian Bank Securities Inc., PI Financial Corp., and Roth Capital Partners, LLC*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................... 1

ARGUMENT ................................................................................................................... 3

    I.    Plaintiffs Fail to State Claims Under Sections 11 or 12(a)(2) ............................. 3

        A.    Plaintiffs' Securities Act Claims Are Subject to Heightened Pleading .................. 3

        B.    The Registration Statement Disclosed the Relevant Contemporaneous Facts and Did Not Guarantee Any Revenue .......................................................... 4

        C.    Defendants Did Not Violate Item 105 of Regulation S-K .................................... 6

        D.    The Bespeaks Caution Doctrine Applies ............................................................... 7

        E.    Plaintiffs Lack Standing to Assert a Section 12(a)(2) Claim ................................. 7

    II.    Plaintiffs Fail to State a Claim Under Section 10(b) .......................................... 8

CONCLUSION .............................................................................................................. 10

- i -

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re AT&T/DirecTV Now Sec. Litig.*,
No. 19-cv-2892, 2020 WL 4909718 (S.D.N.Y. Aug. 18, 2020)................................................2

*Caiafa v. Sea Containers Ltd.*,
331 F. App'x 14 (2d Cir. 2009) ...............................................................................................7

*In re CitiGroup Inc. Bond Litig.*,
723 F. Supp. 2d 568 (S.D.N.Y. 2010)......................................................................................7

*City of Omaha Police & Fire Ret. Sys. v. Evoqua Water Tech. Corp.*,
No. 18-cv-10320, 2020 WL 1529371 (S.D.N.Y. Mar. 30, 2020).............................................7

*In re Complete Mgmt. Inc. Sec. Litig.*,
153 F. Supp. 2d 314 (S.D.N.Y. 2001)....................................................................................10

*In re CPI Card Group Inc. Sec. Litig.*,
No. 16-cv-4531, 2017 WL 4941597 (S.D.N.Y. Oct. 30, 2017)................................................7

*Davidoff v. Farina*,
2005 WL 203051 (S.D.N.Y. Aug. 22, 2005)..........................................................................10

*In re Express Scripts Holdings Co. Sec. Litig.*,
773 F. App'x 9 (2d Cir. 2019) .................................................................................................5

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
986 F. Supp. 2d 487 (S.D.N.Y. 2013)......................................................................................7

*Freudenberg v. E\*Trade Fin. Corp.*,
712 F. Supp. 2d 171 (S.D.N.Y. 2010)....................................................................................10

*Galestan v. OneMain Holdings, Inc.*,
348 F. Supp. 3d 282 (S.D.N.Y. 2018).....................................................................................10

*In re Gander Mountain Co. Sec. Litig.*,
No. Civ. 05-183DWFAJB, 2006 WL 140670 (D. Minn. Jan. 17, 2006).................................2

*Garber v. Legg Mason, Inc.*,
537 F. Supp. 2d 597 (S.D.N.Y. 2008).......................................................................................3

*Gregory v. ProNAi Therapeutics Inc.*,
757 F. App'x 35 (2d Cir. 2018) ...............................................................................................3

*Hawaii Structural Ironworkers Pension Tr. Fund v. AMC Entm't Holdings, Inc.*,
422 F. Supp. 3d 821 (S.D.N.Y. 2019)......................................................................................7

*IKB Intern. S.A. v. Bank of Am.*,
 2014 WL 1377801 (S.D.N.Y. Mar. 31, 2014) ...........................................................................8

*In re Intercept Pharm., Inc. Sec. Litig.*,
 No. 14-cv-1123, 2015 WL 915271 (S.D.N.Y. Mar. 4, 2015) ...................................................10

*IOP Cast Iron Holdings, LLC v. J.H. Whitney Capital Partners, LLC*,
 91 F. Supp. 3d 456 (S.D.N.Y. 2015) ....................................................................................4, 8

*Kemp v. Universal Am. Fin. Corp.*,
 No. 05 CIV. 9883 (JFK), 2007 WL 86942 (S.D.N.Y. Jan. 10, 2007) ....................................10

*Landesbank Baden-Wurttemberg v. Goldman, Sachs & Co.*,
 478 F. App'x 679 (2d Cir. 2012) ............................................................................................8

*Levy v. Gutierrez*,
 No. 14-cv-443, 2017 WL 2191592 (D.N.H. May 4, 2017) ......................................................10

*Lewis v. Straka*,
 No. 05-C-1008, 2006 WL 2927658 (E.D. Wis. Oct. 12, 2006) ................................................2

*Litwin v. Blackstone Group, L.P.*,
 634 F.3d 706 (2d Cir. 2011) ..................................................................................................10

*Makor Issues & Rights, Ltd. v. Tellabs, Inc.*,
 437 F.3d 588 (7th Cir. 2006) .................................................................................................10

*Meyer v. JinkoSolar Holdings Co.*,
 761 F.3d 245 (2d Cir. 2014) ....................................................................................................4

*New Orleans Emp. Ret. Sys. v. Celestica, Inc.*,
 455 F. App'x 10 (2d Cir. 2011) ..............................................................................................10

*Novak v. Kasaks*,
 216 F.3d 300 (2d Cir. 2000) ..................................................................................................10

*Panther Partners Inc. v. Ikanos Commc'ns, Inc.*,
 681 F.3d 114 (2d Cir. 2012) ................................................................................................6, 7

*Plevy v. Haggerty*,
 38 F. Supp. 2d 816 (C.D. Cal. 1998) ......................................................................................2

*Plumbers & Pipefitters Nat'l Pension Fund v. Davis*,
 No. 1:16-cv-3591-GHW, 2020 WL 1877821 (S.D.N.Y. Apr. 14, 2020) ................................10

*Porwal v. Ballard Power Sys., Inc.*,
 2019 WL 1510707 (S.D.N.Y. Mar. 21, 2019) .........................................................................8

*Recupito v. Prudential Secs., Inc.*,
 112 F. Supp. 2d 449 (D. Md. 2000) .........................................................................................5

*Rombach v. Chang*,
 355 F.3d 164 (2d Cir. 2004) ....................................................................................................3

*Silsby v. Icahn*,
  17 F. Supp. 3d 348 (S.D.N.Y. 2014)..................................................................................1

*In re Silvercorp Metals, Inc. Sec. Litig.*,
  26 F. Supp. 3d 266 (S.D.N.Y. 2014)................................................................................10

*Singh v. Schikan*,
  106 F. Supp. 3d 439 (S.D.N.Y. 2015)................................................................................2

*In re Skechers USA, Inc. Sec. Litig.*,
  444 F. Supp. 3d 498 (S.D.N.Y. 2020)..............................................................................10

*In re Supercom Inc. Secs. Litig.*,
  No. 15-cv-9650, 2018 WL 4926442 (S.D.N.Y. Oct. 10, 2018)........................................9

*In re Symbol Techs., Inc. Sec. Litig.*,
  No. 05-CV-3923 DRH AKT, 2013 WL 6330665 (E.D.N.Y. 2013)..................................10

*Tabak v. Canadian Solar Inc.*,
  549 F. App'x 24 (2d Cir. 2013) ........................................................................................9

*Thomas v. Magnachip Semiconductor Corp.*,
  167 F. Supp. 3d 1029 (N.D. Cal. 2016) ..........................................................................10

*In re Ultrafem Inc. Sec. Litig.*,
  91 F. Supp. 2d 678 (S.D.N.Y. 2000)..................................................................................2

*Zaghian v. Farrell*,
  675 F. App'x 718 (9th Cir. 2017) ....................................................................................10

**Rules and Statutes**

Fed. R. Civ. P. 8.................................................................................................................3

Fed. R. Civ. P. 9(b) ...........................................................................................................3

**Other Authorities**

17 C.F.R. § 229.303 ..........................................................................................................6

## PRELIMINARY STATEMENT[1]

The Opposition fails to identify any factual allegations showing that Defendants violated the federal securities laws.  HEXO made clear to investors from the time of the offering that the SQDC needed to accelerate the pace of its store openings and cannabis purchases significantly in order to fulfill the Year One commitment.  HEXO accurately represented that it had the *legal right* to collect full payment for Year One if the SQDC did not purchase the entire volume.  HEXO did not, however, book the full Year One payment as revenue at the time of the offering, or guarantee that HEXO would ultimately *exercise* its contractual right to claim payment – a distinction wholly missed by the Opposition.

The Opposition instead asserts that the SQDC Agreement disclosures were misleading because they purportedly understated the risk that the SQDC might ultimately not purchase its full Year One allotment, or that HEXO might decline to collect full payment.  But the only facts pled in support of this claim are: (i) the facts HEXO expressly disclosed in its pre-offering filings about the SQDC's modest purchases to date, the importance of the SQDC relationship to HEXO, and the lack of a payment commitment for future years (which, according to Plaintiffs, shows that HEXO knew all along it was unlikely to obtain full payment); and (ii) the fact that HEXO ultimately declined to exercise the payment right after the SQDC's Year One purchases fell short.  Neither set of facts supports a claim.  With respect to the first, it is well-settled that a plaintiff cannot plead a securities violation for a purportedly undisclosed fact or risk that a plaintiff has discerned *from the very facts set forth in the disclosures*.[2]  And with respect to the second, it is

---

[1] Abbreviations and capitalized terms have the same meaning as in the Memorandum of Law in Support of Defendants' Joint Motion to Dismiss [Dkt. #116] ("Memorandum" or "Mem.").  All exhibit citations are to the Declarations of Todd Batson and Peter Stokes [Dkt. #115 and #117] submitted in support of the Memorandum.

[2] *See Silsby v. Icahn*, 17 F. Supp. 3d 348, 362 (S.D.N.Y. 2014) ("Because Dynegy supplied investors with financial information from which investors could draw their own conclusions about whether Dynegy Holdings was solvent, the 10(b) Defendants had no duty to use the term 'insolvent'" in their disclosures); *Singh v. Schikan*, 106 F. Supp. 3d 439,

equally well-settled that "fraud by hindsight" does not state a claim.[3]  HEXO made clear at the time of the offering that the SQDC would need to accelerate its cannabis purchases significantly to fulfill its Year One commitment.  HEXO also disclosed that the SQDC expected to build out its footprint significantly as the market for legal cannabis ramped up during Canada's first year of legalized adult recreational use.[4]  Although HEXO's optimism about the SQDC's expected growth turned out to be misplaced, Plaintiffs plead no facts showing that HEXO knew at the time of the offering that the SQDC was unlikely to achieve its Year One growth.[5]

The Opposition's contentions regarding HEXO's post-offering disclosures are equally unavailing.  Plaintiffs wholly fail to allege any particularized facts showing that these disclosures were false when made, let alone intentionally or recklessly so.  To be sure, HEXO encountered numerous problems during its initial foray as a public company in a nascent market.  But disclosing

---

449-50 (S.D.N.Y. 2015) ("The conclusion that defendants were not required to posit that their study might fail is all the more appropriate where, as here, such speculation would have been based solely on facts disclosed in the Registration Statement, from which investors were equally free to assess the study's likelihood of success"); *Lewis v. Straka*, No. 05-C-1008, 2006 WL 2927658, at *4 (E.D. Wis. Oct. 12, 2006) ("CIB provided sufficient information to allow investors to draw conclusions regarding the nature of its business and investigate the risks"); *In re Gander Mountain Co. Sec. Litig.*, No. Civ. 05-183DWFAJB, 2006 WL 140670, at *11 (D. Minn. Jan. 17, 2006) (rejecting argument "that investors were misled because Defendants did not emphasize different facts or draw conclusions from the facts Gander Mountain did disclose"); *In re Ultrafem Inc. Sec. Litig.*, 91 F. Supp. 2d 678, 699 (S.D.N.Y. 2000) (no securities claim where company's disclosures "provided accurate hard data from which analysts and investors can draw their own conclusions" about risk of customers' acceptance of device); *Plevy v. Haggerty*, 38 F. Supp. 2d 816, 833 (C.D. Cal. 1998) ("Moreover, WDC disclosed all of the hard data, such as profit margins and inventory changes, from which potential investors could draw their own conclusions about WDC's financial health and future prospects").

[3] *See Singh*, 106 F. Supp. 3d at 449 (collecting cases that "fraud by hindsight" allegations are insufficient, and rejecting claim based on ultimate failure of clinical trials).

[4] *See* Ex. 7 at 4 (disclosing that SQDC expected to grow number of retail stores by over 300% and to sell online).

[5] *See In re AT&T/DirecTV Now Sec. Litig.*, No. 19-cv-2892, 2020 WL 4909718, at *16 (S.D.N.Y. Aug. 18, 2020) ("While Defendants' optimism may have proven to be unwarranted, Plaintiffs have not alleged that Defendants reviewed any contemporaneous information that should have undermined the optimism …."); *Singh*, 106 F. Supp. 3d at 449 ("In the absence of data establishing that Demand-III would not meet its endpoints, defendants were not required to predict negative results or to hypothesize its failure").

problems – even significant ones – in "dribs and drabs" as they arise, is not securities fraud.[6]  This

case should be dismissed in its entirety, with prejudice.[7]

## ARGUMENT

I.    **PLAINTIFFS FAIL TO STATE CLAIMS UNDER SECTIONS 11 OR 12(A)(2)**

### A.    Plaintiffs' Securities Act Claims Are Subject to Heightened Pleading

Plaintiffs contend that Rule 8 governs their Securities Act claims because they are

supposedly pleaded separately from the Exchange Act claims and concern distinct alleged

misstatements.  Opp. at 9.  The Opposition, however, does not dispute that Securities Act claims

sounding in fraud are subject to Rule 9(b).  *Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004).

Plaintiffs' claims are predicated on the assertion that the Registration Statement "touted" the

SQDC Agreement's take-or-pay right as a guaranteed source of revenues, despite HEXO "never

having any intention" of claiming payment if the SQDC's Year One purchases fell short.[8]  These

are classic fraud allegations concerning Defendants' "intent," subject to Rule 9(b) and the

PSLRA.[9]  In any event, courts routinely dismiss Securities Act claims under Rule 8.[10]

---

[6] *See, e.g.*, Mem. at 3 n.7.  Moreover, HEXO accurately disclosed the amount of cannabis it sold each quarter after the offering.  *See*  Ex. 15 at 16 (2Q2019 sales); Ex. 16 at 19 (3Q2019 sales); Ex. 17 at 24-25 (4Q2019 sales); *id.* at 14 (disclosing decision not to require full payment for Year One); Ex. 18 at 22-23 (1Q2020 sales).

[7] Courts routinely deny leave to amend when, as here, plaintiffs make only a conclusory request to amend without showing how the proposed amendment would support a viable claim.  *See Gregory v. ProNAi Therapeutics Inc.*, 757 F. App'x 35, 39 (2d Cir. 2018) (affirming denial of plaintiffs' unadorned request to amend that did not show how proposed amendment would cure complaint's deficiencies).

[8] Plaintiffs contend their Securities Act claims "do not allege falsity on the basis of 'intent'" and that Defendants took that language from the Exchange Act allegations.  Opp. at 9.  The Memorandum highlighted three examples of allegations sounding in fraud, and none come from Exchange Act allegations.  *See* FAC ¶ 14 ("Nature of Action" section; paragraph immediately precedes first mention of January 25, 2019 Prospectus); *id.* ¶ 187 (section entitled "Material Misstatements and Omissions *Under the Securities Act*" (emphasis added); subsection entitled "Misstatements and Omissions *in the January 25, 2019 Prospectus*" (emphasis added)); *id.* ¶ 325(b) ("Class Action Allegations" section).

[9] Plaintiffs thus cannot distinguish cases subjecting Securities Act claims sounding in fraud to Rule 9(b).  *See* Mem. at 12-13.  In each of those cases, plaintiffs alleged that defendants withheld known information, which is what Plaintiffs allege here, albeit conclusorily.  Moreover, although the court in *Garber v. Legg Mason, Inc.*, 537 F. Supp. 2d 597, 612 (S.D.N.Y. 2008), subjected the Securities Act claims to Rule 8, *the court dismissed the claims*; and there, unlike here, plaintiffs had "allege[d] no fraudulent intent."  *Id.*

[10] *See* Mem. at 13 n.22.

### B. The Registration Statement Disclosed the Relevant Contemporaneous Facts and Did Not Guarantee Any Revenue

Plaintiffs contend that Defendants "misstated that HEXO was guaranteed first-year revenue regardless of demand." Opp. at 9-10.  As stated on pages 1-2 above, HEXO did not guarantee it would enforce its right to payment and cautioned that there was significant uncertainty in how much cannabis HEXO could sell through the SQDC (or elsewhere).  Mem. at 6-7.

The Opposition also overstates the Court's holding in *IOP Cast Iron Holdings, LLC v. J.H. Whitney Capital Partners, LLC*, 91 F. Supp. 3d 456 (S.D.N.Y. 2015).  *See* Opp. at 9-10.  There, the claim arose from the issuer's failure to disclose that prior to the offering, a key customer had indicated it intended to reduce its orders significantly, or renegotiate the contract.  With that knowledge, the issuer nevertheless affirmed in the offering documents that no "material customer" had any plans to modify its relationship with the company.  91 F. Supp. 3d at 472.  This Court unsurprisingly held that such a representation was sufficiently alleged to be misleading.[11]

In contrast, Plaintiffs have not identified ***any*** information Defendants knew at the time of the offering that was withheld.[12]  The other cases involving "take-or-pay" rights or similar guaranteed payment rights cited by the parties were otherwise dismissed on the pleadings.[13] HEXO's Registration Statement disclosed that total company-wide sales during the initial three months of the SQDC Agreement (October 17, 2018 to January 13, 2019) totaled approximately

---

[11] The Court's reference to a "guaranteed-order" contract appears to have been in passing and is not a holding that disclosure of the existence of a fixed-payment contract requires a disclosure that there is no assurance the company will enforce the payment provision.  91 F. Supp. 3d at 473.  In fact, the Court's opinion recognized the inherent risk that exists in every fixed-term take-or-pay agreement with a major customer – *i.e.*, that the customer could attempt to "renegotiate[e] the existing contract" or simply "reduc[e] orders after the existing contract expired."  *See id.* at 472-73.  HEXO disclosed the contemporaneous facts giving rise to this risk, and (unlike in *IOP*) there is no allegation that HEXO was aware of additional contemporaneous facts casting doubt on the likelihood of obtaining or enforcing payment in the future.

[12] Similarly distinguishable is *Meyer v. JinkoSolar Holdings Co.*, 761 F.3d 245, 250-51 (2d Cir. 2014) (offering documents described prophylactic measures taken to comply with environmental regulations, but withheld that those measures were failing at the time of the offering to prevent serious ongoing pollution problems).

[13] *See* Mem. at n.23 (collecting cases).

- 4 -

$15.2 million.  Ex. 5 at S-10.  It also disclosed that gross revenue per gram for adult-use sales was $5.45, and that the SQDC had been responsible for approximately 90% of sales.  *Id.*  In other words, all investors had to do to determine how many kilograms the SQDC purchased during the first three months of the SQDC Agreement was divide $15.2 million by $5.45 (2,788,000 grams), divide that by 1,000 to get 2,788 kilograms, and then calculate 90% of that amount (2,509 kilograms).  These disclosures indicated the SQDC was not on pace at the time of the offering to "take" the full Year One allotment, and would thus need to accelerate its build-out.  Mem. at 5-6.

The Registration Statement also disclosed that as of December 2018, the SQDC had opened 12 retail stores, and expected to open 50 by the end of Year One (*i.e.*, October 2019).[14]  Plaintiffs allege no facts casting doubt on this expectation at the time of the offering.  (*See supra* n.5.)

The Opposition further asserts that the Registration Statement's truthful recitation of the amounts HEXO expected to supply pursuant to the SQDC Agreement was misleading because it omitted that: (1) the SQDC's purchases were modest at the time of the offering; (2) the SQDC had opened only 12 retail stores at the time of the offering; (3) the modest demand and store openings would have an effect beyond Year One; and (4) the take-or-pay right was illusory because of HEXO's "relationship" with the SQDC.[15]  But the Registration Statement disclosed HEXO's actual sales, the SQDC's progress with opening stores, and the SQDC's importance as a customer.[16]  Plaintiffs do not allege that HEXO was aware of any undisclosed contemporaneous

---

[14] HEXO disclosed the SQDC's progress with opening retail stores in its Management Discussion & Analysis ("MD&A") for 1Q2019, which the Registration Statement incorporated by reference.  *See* Ex. 5 at S-5.

[15] As explained before, Plaintiffs merely speculate that HEXO decided by January 2019 to surrender its payment right in the event of a shortfall because of the SQDC's importance to HEXO's business.  Mem. at 14.

[16] Again, the general risk that a company may decide in the future to make concessions for a key customer exists in virtually every business relationship that relies on large customers.  Mem. at 15.  That does not mean HEXO *already* had decided in January 2019 that it would never exercise its payment right, or that it had an obligation to make further disclosure about this risk.  *See In re Express Scripts Holdings Co. Sec. Litig.*, 773 F. App'x 9, 14 (2d Cir. 2019); *Recupito v. Prudential Secs., Inc.*, 112 F. Supp. 2d 449, 457 (D. Md. 2000).  Requiring companies to disclose

facts demonstrating that the SQDC was unlikely to complete its anticipated build-out, or that HEXO was unlikely to collect full payment for Year One (or did not intend to enforce it), let alone that sales beyond Year One would also be less than anticipated. Again, the only contemporaneous facts pled in support of this claim are the facts expressly disclosed in the Registration Statement.[17]

Finally, Plaintiffs' concern that Defendants' reasoning would result in "investors [not being able to] rely on any statement because a company could irrationally pivot without impunity" is misguided. Opp. at 11. The Securities Act requires that statements be true at the time of the offering. Post-offering business decisions[18] and other "fraud by hindsight" allegations cannot, standing alone, render statements that were true when made misleading. (*See supra* at 1-2.)

**C.    Defendants Did Not Violate Item 105 of Regulation S-K**

The FAC alleges Defendants violated Item 105 of Regulation S-K, which requires disclosure of the most significant risk factors. Mem. at 16. The Memorandum explained why this claim fails—Plaintiffs fail to allege any facts showing that HEXO knew at the time of the offering that the SQDC would not fulfill its Year One obligation, let alone that HEXO already had determined to forego payment in the event of a shortfall. *Id.* at 16-17 & n.28.

Conceding the Registration Statement's risk disclosures were sufficient, Plaintiffs have now morphed their claim into one under Item 303, 17 C.F.R. § 229.303, which requires disclosure of the effect that any known trends or uncertainties might have on future revenues. *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 120 (2d Cir. 2012). The Registration

---

publicly—in full view of their counterparties—that they might not enforce contractual rights, when that decision has not been made, would be unreasonable from a commercial or securities disclosure perspective.

[17] *See supra* at 1-2. Plaintiffs therefore cannot distinguish cases rejecting Section 11 claims based on hindsight or conclusory assertions that companies must have known about future business decisions. Mem. at 13-14.

[18] Plaintiffs quibble with Defendants' characterization of HEXO's decision to not claim payment as a "business decision," though that is precisely what it was. There are no allegations showing that this decision had been made at the time of the offering.

Statement, however, ***did just that***, expressly disclosing the SQDC's slow rate of purchases to date and cautioning that reduced future purchases by the SQDC could materially affect revenues.[19]

### D.    The Bespeaks Caution Doctrine Applies

Plaintiffs contend the Registration Statement failed to disclose that the risk—possible lower purchase volumes and alterations in purchase patterns—had already transpired, so cautionary language was meaningless.  Opp. at 13.  Again, the Registration Statement disclosed HEXO's actual sales, the SQDC's progress opening stores, and never guaranteed that HEXO would claim payment in the event of a shortfall.  *Supra* at 1-2, 4-5.  The Registration Statement also disclosed the very risk that materialized—the risk of an industry-wide sales shortfall.

### E.    Plaintiffs Lack Standing to Assert a Section 12(a)(2) Claim

Plaintiffs contend that Medley has standing to assert a Section 12(a)(2) claim because he "bought HEXO shares pursuant to the IPO and the [Securities Act] Defendants 'were sellers … and/or solicitors of sales of' HEXO stock."  Opp. at 13.[20]  The FAC, however, alleges Medley purchased "some" HEXO shares "pursuant ***or traceable to***" the offering, which is the standard under Section 11, not Section 12(a)(2).  FAC ¶ 50 (emphasis added).[21]  The FAC does not allege that Medley purchased shares ***in the offering***, and therefore, he lacks standing.  Mem. at 18-19.[22]

---

[19] Plaintiffs' cases are therefore distinguishable because they involved known but undisclosed adverse trends.  *See Panther Partners*, 681 F.3d at 116-17 (issuer knew but failed to disclose trend that was affecting revenues); *In re CPI Card Group Inc. Sec. Litig.*, No. 16-cv-4531, 2017 WL 4941597, at *3 (S.D.N.Y. Oct. 30, 2017) (same); *In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 487, 514-16 (S.D.N.Y. 2013) (same).  Once again, Plaintiffs plead no contemporaneous facts purportedly supporting their claim other than those HEXO disclosed.

[20] Plaintiffs appear to concede that Sweeney lacks standing to assert a Section 12(a)(2) claim.

[21] *See also* FAC ¶¶ 337, 340-41 (similar); *In re CitiGroup Inc. Bond Litig.*, 723 F. Supp. 2d 568, 585 (S.D.N.Y. 2010).

[22] In *Caiafa v. Sea Containers Ltd.*, 331 F. App'x 14, 17 (2d Cir. 2009), the court reasoned "[w]e need not consider here whether a plaintiff may ***ever*** have a Section 12(a)(2) claim based on an aftermarket purchase … ***[because] Plaintiffs have failed to allege that they purchased securities under circumstances requiring the delivery of a prospectus and therefore fail to state a claim even under*** **Feiner*****'s reasoning***." (second emphasis added).  Similarly, here, Medley does not allege he purchased shares in the offering, therefore he does not allege circumstances requiring delivery of a prospectus.  Further, neither *Hawaii Structural Ironworkers Pension Tr. Fund v. AMC Entm't Holdings, Inc.*, 422 F. Supp. 3d 821, 856 (S.D.N.Y. 2019), nor *City of Omaha Police & Fire Ret. Sys. v. Evoqua Water Tech. Corp.*, No. 18-cv-10320, 2020 WL 1529371, at *12 (S.D.N.Y. Mar. 30, 2020) has relevance to this point, as the

## II.  PLAINTIFFS FAIL TO STATE A CLAIM UNDER SECTION 10(B)

The Opposition's Section 10(b) arguments are equally meritless.  Plaintiffs baldly assert, for example, that Defendant St. Louis had "no grounds" for his June 13, 2019 expression of "confidence" in HEXO's ability to offset the slowdown in expected SQDC revenues (which HEXO candidly disclosed) with sales in other provinces.  (*See* Opp. at 16.)  Plaintiffs, however, plead no facts whatsoever showing that HEXO lacked any basis for optimism in June 2019 regarding sales in other provinces.  Indeed, the Complaint contains no allegations about sales prospects for other provinces *at all*.  The PSLRA places the burden *on Plaintiffs* to plead particularized facts showing that a statement is fraudulent – a burden that Plaintiffs cannot end-run by simply alleging in conclusory fashion that optimistic statements lack a reasonable basis.[23]

The Opposition also asserts in conclusory fashion that HEXO management should be presumed to have learned about the Block B licensing issue at the Niagara facility before July 2020, apparently conceding that HEXO made no affirmative statements about Block B after the licensing issue was discovered in July that could be rendered misleading by the discovery.  (*See* Opp. at 17-18.)  Plaintiffs, however, offer no particularized facts showing that even *Newstrike itself* knew of the licensing issue before the acquisition, let alone that HEXO discovered it during deal-related diligence.[24]  It is certainly not unprecedented for companies to discover glitches, legal

---

Securities Act Defendants do not dispute they were statutory sellers for the offering, only that Plaintiffs fail to allege they purchased their HEXO securities *in* the offering.

[23] *See IOP*, 91 F. Supp. 3d at 467-69 (describing PSLRA standards).  In *IOP*, unlike here, the plaintiff actually alleged contemporaneous facts showing that the defendants knew of undisclosed information rendering their statements misleading, not just conclusory assertions that the defendants had "no basis" for their statements.  *See id.* at 471-73.

[24] *See Porwal v. Ballard Power Sys., Inc.*, 2019 WL 1510707, at *7 (S.D.N.Y. Mar. 21, 2019) (rejecting conclusory allegation that adverse facts "could have easily been discovered through basic due diligence"); *IKB Intern. S.A. v. Bank of Am.*, 2014 WL 1377801, at *9 (S.D.N.Y. Mar. 31, 2014) (rejecting conclusory "due diligence" allegation "because [plaintiffs] do not identify what was discovered in the due diligence review that provided defendants with knowledge. . . .  '[A]n allegation that defendants had access to information that was inconsistent with their alleged misstatements must specifically identify the reports or statements containing this information'") (quoting *Landesbank Baden-Wurttemberg v. Goldman, Sachs & Co.*, 478 F. App'x 679, 682 (2d Cir. 2012)).

issues and other challenges after an acquisition that were not unearthed in due diligence. There are no particularized factual allegations contradicting HEXO's disclosure that Health Canada had inspected Block B in February 2019 and raised no licensing concerns about the block, which further undercuts any inference that HEXO management knew of the issue before July. (*See* Ex. 11.)  And, for the reasons set forth in the Memorandum at 22-23, Plaintiffs fail to allege facts showing that not disclosing the licensing issue earlier rises to the level of fraud.[25]

Plaintiffs' arguments about "radically unachievable financial projections" (Opp. at 16) and "delayed impairment" argument (*id.* at 19) likewise fail for want of particularized facts. The Opposition asserts in conclusory fashion that HEXO's projections and inventory accounting must have been false when made simply because there was a subsequent miss or impairment. "Fraud by hindsight," however, is not a cognizable theory. (*See supra* note 3.)  Further, as stated above, the SQDC was expected to accelerate store openings significantly during the second half of Year One. (*See supra* at 5.)  Plaintiffs allege no particularized facts showing that Defendants knew of any undisclosed facts making the projections unachievable or requiring an impairment at the time the alleged misstatements were made. Further, as set forth in the Memorandum at 24-25, HEXO's projections (and corresponding opinions of confidence) are protected by the PSLRA safe harbor, the bespeaks caution doctrine, and the common law protections for statements of opinion.

---

[25] *See* Mem. at n.8 & 41.  As set forth in the Memorandum at 22-23, Plaintiffs' scienter allegations fail given: (i) the absence of motive allegations; (ii) the prior disclosure that nearly half of the Niagara facility was unlicensed and that HEXO "expected licensing delay" to occur at the facility; (iii) the absence of particularized allegations regarding the scope of the licensing issue or any impact on HEXO's financials; (iv) the virtual avalanche of other negative information that HEXO disclosed during the interim, including the complete shutdown of the Niagara facility; and (v) the absence of any allegation that the SQDC or any regulator treated HEXO negatively over the issue.  Plaintiffs' assertion that Defendants were motivated to raise money for stock offerings – offerings that came ***after*** most of the alleged corrective disclosures – is also misplaced.  *See, e.g.*, *Tabak v. Canadian Solar Inc.*, 549 F. App'x 24, 28-29 (2d Cir. 2013) (collecting cases and rejecting allegation regarding motive to complete stock offering at inflated price); *In re Supercom Inc. Secs. Litig.*, 2018 WL 4926442, at *29 (S.D.N.Y. Oct. 10, 2018) (same).

Plaintiffs' case citations are readily distinguishable.[26]  The Opposition does not cite any instance where a complaint as weak as this one survived a motion to dismiss.

## **CONCLUSION**

As this Court recently reiterated, "it is well understood that 'securities class litigation continues to be lawyer-driven in material respects and [that] the reforms Congress contemplated in the Reform Act can be achieved, if at all, only with some help from the courts.'" [Dkt. 121 at 5 (citation omitted)].  "Congress enacted the [Reform Act] to weed out frivolous lawsuits brought by unlucky or unwise investors looking for someone to blame." *Kemp v. Universal Am. Fin. Corp.*, No. 05 CIV. 9883 (JFK), 2007 WL 86942, at *9 (S.D.N.Y. Jan. 10, 2007).  That is precisely the case here.  Plaintiffs' disappointment with the growth of Canada's nascent legal cannabis market is not a basis for a federal securities claim, and the FAC should be dismissed with prejudice.[27]

---

[26] *See Zaghian v. Farrell*, 675 F. App'x 718, 720 (9th Cir. 2017) (company knew but withheld adverse information; here, HEXO disclosed all known information); *New Orleans Emp. Ret. Sys. v. Celestica, Inc*., 455 F. App'x 10, 14 (2d Cir. 2011) (same); *Makor Issues & Rights, Ltd. v. Tellabs, Inc*., 437 F.3d 588, 597, 599 (7th Cir. 2006) (same); *Plumbers & Pipefitters Nat'l Pension Fund v. Davis*, No. 1:16-cv-3591-GHW, 2020 WL 1877821, at *3-4 (S.D.N.Y. Apr. 14, 2020) (same); *Galestan v. OneMain Holdings, Inc*., 348 F. Supp. 3d 282, 299 (S.D.N.Y. 2018) (same); *In re Symbol Techs., Inc. Sec. Litig*., No. 05-CV-3923 DRH AKT, 2013 WL 6330665, at *7 (E.D.N.Y. 2013) (same); *Freudenberg v. E\*Trade Fin. Corp*., 712 F. Supp. 2d 171, 197-98 (S.D.N.Y. 2010) (same); *see also Litwin v. Blackstone Group, L.P.*, 634 F.3d 706, 718 (2d Cir. 2011) (though relevant information was public, company failed to disclose "potential future impact," which was not public knowledge); *Novak v. Kasaks*, 216 F.3d 300, 315 (2d Cir. 2000) (company inflated value of obsolete and nearly worthless inventory and deliberately failed to adhere to publicly stated markdown policy; here, no particularized allegations that HEXO knowingly overstated inventory known to be impaired); *In re Skechers USA, Inc. Sec. Litig*., 444 F. Supp. 3d 498, 512 (S.D.N.Y. 2020) (finding company did not guarantee financial results despite executive's prediction company would "certainly" achieve projections); *Levy v. Gutierrez*, No. 14-cv-443, 2017 WL 2191592, at *13 (D.N.H. May 4, 2017) (company knew but withheld adverse information; here, HEXO disclosed all known information); *Thomas v. Magnachip Semiconductor Corp*., 167 F. Supp. 3d 1029, 1042-44 (N.D. Cal. 2016) (scienter established, despite defendants not selling stock, where other company violated "arguably the most fundamental and straightforward accounting principle"—when to recognize revenue, without which company would have missed estimates every quarter—among other badges of fraud); *In re Intercept Pharm., Inc. Sec. Litig*., No. 14-cv-1123, 2015 WL 915271, at *10 (S.D.N.Y. Mar. 4, 2015) (single statement by company's CEO that he did not "want to overplay" company's performance concerned number of patients, not efficacy or trial results, and insufficient to infer "general mindset of tempering optimism with caution"); *In re Silvercorp Metals, Inc. Sec. Litig*., 26 F. Supp. 3d 266, 275-76 (S.D.N.Y. 2014) (strong inference of scienter where company retaliated against negative press by coordinating with local police to arrest and interrogate witnesses); *Davidoff v. Farina*, 2005 WL 203051, at *7 (S.D.N.Y. Aug. 22, 2005) (company knew of impairment in early 2001 but waited until the fourth quarter to record impairment; here, plaintiffs offer no particularized allegations showing that HEXO officers knew impairment should have been taken earlier); *In re Complete Mgmt. Inc. Sec. Litig*., 153 F. Supp. 2d 314, 327-28 (S.D.N.Y. 2001) (defendants inflated stock value so as to use stock as currency to purchase medical practices).

[27] The control person claims also fail for the reasons stated in the Memorandum at 25.

Dated:  October 5, 2020

NORTON ROSE FULBRIGHT US LLP


*/s/ Peter A. Stokes*
Gerard G. Pecht
Todd D. Batson (TB-0629)
1301 McKinney, Suite 5100
Houston, Texas 77010-3095
Telephone:  (713) 651-5151
Facsimile:  (713) 651-5246

Peter A. Stokes
98 San Jacinto Boulevard, Suite 1100
Austin, Texas 78701-4255
Telephone:  (512) 536-5287
Facsimile:   (512) 536-4598

*Attorneys for HEXO Corp., Sébastien St-Louis, Michael Monahan, Steve Burwarsh, Adam Miron, Michael Munzar, Jason Ewart, Vincent Chiara, Nathalie Bourque, and Ed Chaplin*

Dated:  October 5, 2020

SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP


*/s/ Jay B. Kasner*
Jay B. Kasner
Robert A. Fumerton
Michael C. Griffin
One Manhattan West
New York, New York 10001
Telephone:  (212) 735-3000
Facsimile:   (212) 735-2000

*Attorneys for CIBC World Markets Inc., BMO Nesbitt Burns Inc., Oppenheimer & Co. Inc., Altacorp Capital Inc., Beacon Securities Limited, Bryan, Garnier & Co Ltd, Cormark Securities Inc., Eight Capital, GMP Securities L.P., Laurentian Bank Securities Inc., PI Financial Corp., and Roth Capital Partners, LLC*

- 11 -